Floyd W. Bybee, #012651
BYBEE LAW CENTER, PLC
2473 S. Higley Road
Suite 104-308
Gilbert, AZ 85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Luis R. Montoya;<br><br>   Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, National Association; and<br>Trans Union, LLC;<br><br>   Defendants. | No.<br><br><br>COMPLAINT<br><br><br>(Jury Trial Demanded) |

## I. Preliminary Statement

1. Plaintiff brings this action for damages based upon Defendants' violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq. Plaintiff seeks to recover statutory damages, actual damages, punitive damages, costs and attorney's fees.

## II. JURISDICTION

2. Jurisdiction of this Court, over this action and the parties herein, arises under 15 U.S.C. § 1681p (FCRA), and 28 U.S.C. § 1331. Venue

lies in the Phoenix Division of the District of Arizona as Plaintiff's claims arose from acts of the Defendants perpetrated therein.

### III.  PARTIES

3. Plaintiff resides in Maricopa County, Arizona.
4. Plaintiff is a "consumer" as defined by FCRA § 1681a(c).
5. Defendant Wells Fargo Bank, National Association is a California corporation conducting business within the state of Arizona.
6. Wells Fargo is a "person" as that term is defined by FCRA § 1681a(b).
7. Wells Fargo is a "furnisher" of information as contemplated by FCRA § 1681s-2(a) & (b), who regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.
8. Trans Union, LLC is a Delaware limited liability company conducting business within the state of Arizona.
9. Trans Union is a "person" as that term is defined by FCRA § 1681a(b).
10. Trans Union is a "consumer reporting agency" as that term is defined by FCRA § 1681a(f).

### IV.  Factual Allegations

11. In November 2005, Plaintiff purchased a Nissan truck which was financed through a Retail Installment Sales Contract ("RISC") assigned to Bank of America.
12. After making his first few payments to Bank of America, Plaintiff was notified by the dealership in April 2006, that his contract had been re-assigned to Wells Fargo, but that the terms remained the same.
13. Plaintiff made his May, June and July 2006 payments to Wells Fargo,

1  |     | but was told each time by the branch teller, that his payment was
2  |     | $510, not the $491 he had been paying to Bank of America.
3  | 14. | In or about August 2006, Plaintiff learned that the dealership had
4  |     | created a new RISC in his name, paying off the Bank of America debt,
5  |     | and assigning the fraudulent RISC to Wells Fargo Bank.
6  | 15. | Wells Fargo was notified of this fraud in August 2006.
7  | 16. | In September 2008, Plaintiff sent a letter to each of the three national
8  |     | consumer reporting agencies, including Trans Union, notifying them of
9  |     | his dispute of the Wells Fargo tradeline reported on his credit reports,
10 |     | including notice that the account was the result of fraud.
11 | 17. | Plaintiff attached a copy of a completed ID Theft Affidavit and a copy
12 |     | of a police report to his letters to each of the consumer reporting
13 |     | agencies, including Trans Union.
14 | 18. | Upon information and belief, Equifax received a copy of Plaintiff's
15 |     | September 2008 dispute letter and attachments.
16 | 19. | Upon information and belief, Experian received a copy of Plaintiff's
17 |     | September 2008 dispute letter and attachments.
18 | 20. | Upon information and belief, Trans Union received a copy of Plaintiff's
19 |     | September 2008 dispute letter and attachments.
20 | 21. | Equifax notified Plaintiff in October 2008 that it had deleted the Wells
21 |     | Fargo tradeline from his Equifax credit report.
22 | 22. | Experian notified Plaintiff in October 2008 that it had deleted the
23 |     | Wells Fargo tradeline from his Experian credit report.
24 | 23. | Upon information and belief, Trans Union contacted Wells Fargo
25 |     | concerning Plaintiff's dispute is its tradeline reported to Trans Union.

24. Upon information and belief, Trans Union did not forward to Wells Fargo a copy of Plaintiff's ID Theft Affidavit.

25. Upon information and belief, Trans Union did not forward to Wells Fargo a copy of Plaintiff's Police Report.

26. Upon information and belief, Wells Fargo subsequently verified to Trans Union that its tradeline was correctly reported.

27. In the alternative, upon information and belief, Wells Fargo subsequently "updated" the reporting of its tradeline to Trans Union.

28. On or about October 13, 2008, Trans Union sent Plaintiff notice of the results of its investigation of Plaintiff's dispute, which stated that there was "New Information Below."

29. Trans Union's reporting of the Wells Fargo tradeline had changed from $4,882 owing, to a zero balance.

30. However, the Wells Fargo tradeline continued to report the derogatory statement: "Payment after charge off/collection."

31. On January 20, 2009, Plaintiff obtained copies of each of his credit reports, including his Trans Union report.

32. Both the Experian and Equifax reports did not show the Wells Fargo tradeline.

33. The Trans Union report continued to show the Wells Fargo tradeline, including the statement "Collection/Chargeoff," and the "condition" as "Derogatory."

34. The Trans Union report also stated in regard to the Wells Fargo account: "Payment after charge off/collection."

35. In or about January 2009, Plaintiff once again sent a letter to Trans

- 4 -

|     |     |     |
| --- | --- | --- |
| 1   |     | Union disputing the Wells Fargo tradeline, and notifying Trans Union |
| 2   |     | that the account was the result of fraud. |
| 3   | 36. | Upon information and belief, Trans Union contacted Wells Fargo |
| 4   |     | concerning Plaintiff's dispute is its tradeline reported to Trans Union. |
| 5   | 37. | Upon information and belief, Wells Fargo subsequently verified to |
| 6   |     | Trans Union that its tradeline was correctly reported. |
| 7   | 38. | On or about February 6, 2009, Trans Union sent Plaintiff notice of the |
| 8   |     | results of its investigation of Plaintiff's dispute, showing that the |
| 9   |     | account had been verified. |
| 10  | 39. | The February 6, 2009 Trans Union report showed that Wells Fargo |
| 11  |     | was continuing to report the account with the derogatory statement: |
| 12  |     | "Payment after charge off/collection." |
| 13  | 40. | As a result of Defendants' continued reporting of the fraudulent |
| 14  |     | account to Plaintiff's credit report, Plaintiff has been denied credit and |
| 15  |     | had to pay higher interest on loans. |
| 16  | 41. | Wells Fargo sent Plaintiff a declination letter on October 11, 2008 |
| 17  |     | stating the reason for its denial of credit was "Poor credit performance |
| 18  |     | with us." |
| 19  | 42. | Wells Fargo's October 11, 2008 letter also stated that its decision was |
| 20  |     | based in whole or in part on information it had received from Trans |
| 21  |     | Union. |
| 22  | 43. | In January 2009, Plaintiff purchased a motorcycle from Ridenow |
| 23  |     | Powersports. |
| 24  | 44. | During the finance process, Ridenow obtained a copy of Plaintiff's |
| 25  |     | credit report from Trans Union which contained the derogatory Wells |

1 | Fargo tradeline.

2 | 45. Plaintiff was able to obtain financing to purchase the motorcycle, but had to pay a higher interest rate than he would have otherwise had to pay had the Wells Fargo tradeline been properly deleted.

46. Upon information and belief, Trans Union's investigation of Plaintiff's disputes of the Wells Fargo tradeline consisted solely of contacting Wells Fargo though sending of an Automated Consumer Dispute Verification form.

47. Defendants have continued to report inaccurate, derogatory and improper information and failed to retract, delete and/or suppress inaccurate, derogatory and improper information about the Plaintiff, as described more fully herein.

48. As a result and proximate cause of Defendants' actions, Plaintiff has suffered actual damages, including, but not limited to, loss of credit opportunities, denial of credit, and emotional distress.

## V.  Causes of Action

### a.  Fair Credit Reporting Act

49. Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

50. Defendant Wells Fargo failed to conduct a reasonable investigation of the disputes it received from Trans Union concerning Plaintiff's account, and otherwise failed to comport with FCRA § 1681s-2(b).

51. As a result of Wells Fargo's actions, Plaintiff has been damaged.

52. Defendant Trans Union failed to conduct a reasonable investigation of Plaintiff's disputes, and otherwise failed to comport with FCRA §

1 | 1681i.
2 | 53. Defendant Trans Union has continually added, stored, maintained and disseminated personal and credit information, in consumer reports it prepared and issued, about Plaintiff which was inaccurate, false, erroneous and misleading despite notice from Plaintiff that such information was inaccurate.
7 | 54. Defendant Trans Union has willfully, or alternatively, negligently, violated FCRA § 1681i.
9 | 55. As a direct result and proximate cause of Trans Union's continued reporting of erroneous and adverse information on Plaintiff's credit reports, Plaintiff has suffered and continues to suffer damages including, but not limited to, humiliation, embarrassment, anxiety, credit denial, higher interest rates, higher insurance rates, and/or loss of opportunity.
15 | 56. As a result of Defendants' negligent failure to comply with the FCRA, Defendants are each liable to Plaintiff in an amount equal to the sum of (1) any actual damages sustained by Plaintiff as a result of said failure and (2) the costs of this action together with reasonable attorneys' fees.
20 | 57. As a result of Defendants' willful failure to comply with the FCRA, Defendants are liable to Plaintiff in an amount equal to the sum of (1) any actual damages sustained by Plaintiff as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 for each such violation; (2) such amount of punitive damages as the court may allow; and (3) the costs of this action together with reasonable

attorneys' fees.

## VI.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendants for:

a) Actual damages under the FCRA, or in the alternative, statutory damages of $1,000 per violation pursuant to FCRA § 1681n;

b) Punitive damages pursuant to FCRA § 1681n;

c) Costs and reasonable attorney's fees pursuant to FCRA §§ 1681n and/or o; and

d) Such other relief as may be just and proper.

DATED    April 14, 2010   .


      s/ Floyd W. Bybee
Floyd W. Bybee, #012651
BYBEE LAW CENTER, PLC
2473 S. Higley Road
Suite 104-308
Gilbert, AZ  85295-3023
Office: (480) 756-8822
Fax: (480) 302-4186
floyd@bybeelaw.com

Attorney for Plaintiff